[Sac. No. 1142. · In Bank.—March 27, 1906.]

E. L. EMERSON et al., Respondents, *v.* YOSEMITE GOLD MINING AND MILLING COMPANY, Appellant.

MINING CLAIM—VALIDITY OF LOCATION—MINING RULE—FAILURE TO DO ANNUAL WORK—RESUMPTION—LAW OF CASE.—Where the validity of the original location of plaintiffs' mining claim, though it failed to comply with a local mining rule, and the invalidity of an adverse

location thereof for plaintiffs' failure to do the requisite amount of annual work, made after plaintiffs had in good faith resumed work, were determined by this court upon a former appeal, such determination is the law of the case.

ID.—SUPPORT OF FINDING—CONFLICTING EVIDENCE.—Where the court found, upon conflicting evidence, that the plaintiffs had resumed work before the adverse location, its determination is conclusive upon this appeal.

ID.—CLAIMS OF FORFEITURE BY CO-OWNERS—DEFENSE OF PRIOR TRANS-FER—IMPROPER REBUTTAL—RECORD NOT RES ADJUDICATA.—Where plaintiffs claimed a forfeiture by co-owners for failure to contribute to annual work, and defendant relied upon a transfer from such co-owners prior to the notice to them to contribute, plaintiffs were improperly allowed in rebuttal to introduce, as an estoppel of record against the defendant, the judgment-roll in an action to which defendant was a party, brought by plaintiffs as alleged successors in interest of the judgment debtors, including such co-owners, to redeem from a sale under the foreclosure of a mortgage, the judgment showing that redemption was permitted to plaintiffs as such successors, where there is nothing in the record to indicate that the precise question of the forfeiture by such co-owners was directly involved and adjudicated.

ID.—MATTER ADJUDGED—RIGHT OF REDEMPTION—PART OWNERSHIP.— The matter adjudged was merely the plaintiffs' right to redeem the whole of the property from the foreclosure sale, and all that it was necessary for them to prove to sustain such right was that they were successors in interest of one or more of the judgment debtors in some part of the property; and the judgment is conclusive only of that which was essential to support such right.

APPEAL from a judgment of the Superior Court of Tuolumne County and from an order denying a new trial. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

F. W. Street, W. C. Kennedy, and Will M. Beggs, for Appellant.

Crittenden Hampton, and J. P. O'Brien, for Respondents.

ANGELLOTTI, J.—This is an action to quiet title to a mining claim in Tuolumne County, called the Slap Jack Mine. Judgment went for the plaintiffs, and defendant Yosemite Gold Mining and Milling Company appeals from the judgment and an order denying its motion for a new

trial. This is the second appeal in this cause. (See *Emerson* v. *McWhirter,* 133 Cal. 510, [65 Pac. 1036].) Upon the first trial judgment was given in favor of defendant McWhirter, and on the appeal therefrom this judgment and an order denying plaintiffs' motion for a new trial were reversed. Upon the going down of the *remittitur,* the Yosemite Gold Mining and Milling Company, claiming to be the successor in interest of defendant McWhirter and defendants Argall, was substituted for "R. S. McWhirter et al.," as a defendant. Plaintiffs base their claim upon a location made by one Coyle in January, 1896. The claim of defendants Argall, which embraced an undivided nine twentieths of the property, was based on the same location, and by deed dated May 31, 1899, said Argalls purported to grant to appellant's immediate predecessor all their interest in said property. The claim of defendant McWhirter, succeeded to by appellant corporation, was based upon an attempted location by McWhirter on January 1, 1899, a few minutes after midnight, made by him upon the theory that plaintiffs had failed to perform the assessment-work for the year 1898.

It is first contended by appellant that Coyle never made a valid location, because he posted but one notice of location on the claim, while the local regulation of the miners of Tuolumne County required two such notices to be posted. The same contention was made upon the former appeal, was there fully discussed, and decided adversely to appellant's claim. What was there said in this matter is now the law of this case.

The second and third points made by appellant relate to the question of the sufficiency of the evidence to support the findings of the court as to the doing by the plaintiffs of the assessment-work for the year 1898. The court found "that during the year 1898, the plaintiffs performed $84.80 worth of labor upon said mine and mining claim; that on the 31st day of December, 1898, the plaintiffs resumed work upon said mine and mining claim, and prosecuted said work diligently thereafter until more than $100 worth of labor and improvements were performed and made thereon, in addition to the labor performed during the year 1898, as aforesaid." Upon the former trial, the court found that the assessment-

work for 1898 had not been performed, and that the land
was, therefore, on January 1, 1899, public mineral land, open
to location, and McWhirter's attempted location on that day
consequently valid. The judgment then given was reversed
upon the ground that, conceding that the requisite one hun-
dred dollars' worth of labor had not been done during the
year 1898, the evidence showed that some work had been
done in good faith during that year, and that on December
31, 1898, prior to McWhirter's attempted location, work was
resumed thereon in good faith by plaintiffs, and continuously
carried on thereafter, to some time late in January, 1899, until
more than one hundred dollars' worth of work, in addition to
that done during 1898, had been done. Section 2324 of the
Revised Statutes of the United States [U. S. Comp. Stats.
1901, p. 1426], providing that on a failure to comply with
the conditions as to doing the requisite work, the mine "shall
be open to relocation in the same manner as if no location
of the same had ever been made, provided, the original locators,
their heirs, assigns, or legal representatives, have not resumed
work upon the claim after failure and before such location,"
it was held by this court thereunder that the resumption of
work on December 31, 1898, and the continuance thereof
to the requisite amount, prevented a forfeiture, and that
McWhirter's attempted location at a time during which plain-
tiffs were in possession, engaged in the continuance of such
work, was unavailing. It cannot be seriously contended that
the evidence given upon the second trial was substantially
different from that given on the first trial as to the character
of the work done, and the amount thereof. Under the views
expressed on the former appeal, which must here be accepted
as the law of the case, the only point upon which there
may be a question at all, so far as the finding of the court
is concerned, is as to whether plaintiffs resumed work on
December 31, 1898, or not until January 2, 1899. Upon
this point, however, there can be no real question here, for
there was a clear conflict in the evidence. There was added
to the testimony given on the former trial, that of two new
witnesses, who testified positively that Boynton, who com-
menced the work, did not arrive at the mine until late in
the afternoon of December 31st, and that he did no work
at all that day. On the other hand, Boynton testified posi-

tively that he arrived at the mine on December 30th, and commenced his work the next day. As to the time of his arrival, he was corroborated by another witness, who accompanied him there, and who was positive as to the date. The evidence of the other witnesses for appellant upon this subject was not materially different from that given by them upon the former trial, where it was held not to be sufficient to even raise a substantial conflict. There was, as shown above, a substantial conflict in the evidence upon this matter on the second trial, but that is the most that can be said for appellant. It was for the trial court to determine this conflict, which it has done by the finding in question, and its determination is conclusive upon this appeal. These are the only points made in relation to the McWhirter interest, and it thus appears that so far as appellant claims under McWhirter, the judgment in favor of plaintiffs was correct.

The remaining points relate to the Argall nine-twentieths interest. This action was commenced February 10, 1899, and it was alleged in the original complaint that the Argalls were, with plaintiffs and one other defendant, the owners of all the property here involved, and that they were made defendants because they would not join as plaintiffs. The Argalls filed their answer on February 27, 1899, admitting all the allegations of the complaint. Judgment was given for McWhirter, and against plaintiffs and the Argalls, May 4, 1899. Upon the reversal of this judgment by this court, and the substitution of appellant as the successor of McWhirter and the Argalls, the plaintiffs, on February 4, 1902, filed a supplemental complaint, alleging that at the time of the commencement of the action the Argalls and the plaintiffs were the owners of this property, and that since the filing thereof one of the then plaintiffs had transferred his interest to another plaintiff, and that the Argalls had forfeited to the plaintiffs, their co-owners, all their interest, for failure to contribute their proportion of the cost of the assessment-work for the year 1898, after proper notice given them on December 20, 1899, the allegations in this behalf being apparently sufficient to bring the case within the provisions of section 2324 of the Revised Statutes of the United States, relative to forfeiture to co-owners. It was also alleged that the alleged subsequent grants to the immediate predecessor

of appellant and appellant itself were taken by the grantees with full notice of such forfeiture. It was further alleged that the plaintiffs were the owners and entitled to the possession of all the property, that the appellant claimed some interest therein adverse to plaintiffs, which claim was without any right whatever, and this was followed by the ordinary prayer in complaints to quiet title. The appellant answered, denying the allegations of the supplemental complaint, setting up its claim based on the McWhirter location, and alleging the transfer by the Argalls to have been made on May 31, 1899, prior to the giving of the notice to contribute. The case was tried upon the issues thus made. The court found in accord with the allegations of the supplemental complaint as to the doing of. the required work for the year 1898, the failure of the Argalls to do any of the same, and their failure to contribute their proportion after notice personally served on them, but it further found that such notice was not given until "after they had executed and delivered" their conveyance to the Yosemite Company, and had ceased to be co-owners with plaintiffs, and upon this ground, concluded that there had been no forfeiture. It made no finding at all upon the allegation that the Yosemite Company and appellant had notice of the facts upon which the claim of forfeiture is based. It, however, further found facts, not specifically alleged in the complaint or answer, upon which it based the conclusion that, as between plaintiffs and appellant, the plaintiffs are the successors in interest of the Argalls in their nine twentieths of said claim. These findings were based upon the judgment-roll in an action brought by said plaintiffs in March, 1901, against certain parties, including this appellant, to obtain a judgment permitting them to redeem the property from a sale of an undivided nineteen twentieths of the land, made under a decree of foreclosure of mortgage. It was alleged in the complaint therein that these plaintiffs are the owners of an undivided nineteen twentieths of said property, and "are the successors in interest of the judgment debtors in said action," among whom were the Argalls, who were, with others, personally liable for the debt, and whose interest in the land was subject to the mortgage. The appellant was the assignee of the certificate of purchase issued by the commissioner at such sale, and it and the commissioner

refused to receive from plaintiff the money necessary to effect a redemption. The defendants in that action filed their answer, denying specifically that plaintiffs were the successors in interest of the judgment debtors. They then offered to allow judgment permitting plaintiffs to redeem the property upon payment of $2,440, less their costs, and plaintiffs accepted the offer, and judgment was entered accordingly, plaintiffs waiving their further claim for damages. The court did not make findings of fact, findings having been waived, and the judgment entered recited the offer and acceptance, and, the money having· been paid, decreed a redemption, and further expressly adjudged "that the plaintiffs herein redeemed the premises and property hereinafter described from said foreclosure sale, as the successors in interest of the judgment debtors in the action aforesaid." This judgment had become final prior to the trial of this cause.

Plaintiffs claim, and the trial court held, that the effect of these proceedings was to estop appellant from here disputing that plaintiffs succeeded to the Argall interest. The judgment-roll in that proceeding was offered by plaintiff in rebuttal, appellant's testimony having been to the effect that the notice to contribute was not given to the Argalls until after they had ceased to be co-owners in the property. It was objected to upon the grounds, among others, that it was not put in issue by the pleadings, and was irrelevant, incompetent, and immaterial. It was received in evidence, subject to a motion to strike out, and such motion was made at the conclusion of the trial, upon substantially similar grounds, and denied. The exceptions to these rulings sufficiently present the points made by appellant in regard to the effect of the proceedings in the redemption suit, so far as this appeal is concerned. We are satisfied that this judgment-roll should not have been received in evidence. It is urged that it was proper evidence in rebuttal of appellant's evidence tending to show that there was no forfeiture. There is, however, nothing in the judgment-roll to indicate that the precise question of the alleged Argall forfeiture was involved in the redemption suit. Taking the allegation of succession in the complaint therein as material in its full scope, it was simply that the plaintiffs therein "are the successors in interest of the judgment debtors in said action." By what

means they succeeded to those interests was not alleged. The allegation was broad enough to include any of the numerous methods by which realty may be acquired. That plaintiffs were the successors in interest of the Argalls by forfeiture, or, indeed, that they were their successors in interest at all, is not essential to the validity of the judgment therein, for admittedly they had succeeded to the other interests, and, as successors in any mode of one or more of the cotenants, were entitled to redeem the whole property. (Code Civ. Proc. § 701, subd. 1.) As successors in part, they could not redeem at all, except by redeeming the whole. (*Eldridge* v. *Wright,* 55 Cal. 531-534.) Where it is sought to show that a certain question in issue has been litigated and determined between the same parties in a previous action, it is not enough that the proposed evidence tends to show that the precise question may have been involved in such litigation. It must clearly appear that it was directly involved and adjudicated. (*Beronio* v. *Ventura County Lumber Co.,* 129 Cal. 232-236, [61 Pac. 958, 79 Am. St. Rep. 118].) The judgment-roll here not showing affirmatively that the question of forfeiture of the Argall interest was involved in that action, it was not admissible in rebuttal of appellant's evidence showing that there was in fact no forfeiture.

We are also of the opinion that the judgment in the redemption suit cannot be held to raise an estoppel upon the question as to the succession to the Argall interest. In *Beronio* v. *Ventura County Lumber Co.,* 129 Cal. 232, [61 Pac. 958, 79 Am. St. Rep. 118], it was said: ''In order that a judgment in one action may constitute an estoppel against the parties thereto in a subsequent action, it must. be made to appear, either upon the face of the record or by intrinsic evidence, that the identical questions involved in the issues to be tried were determined in the former action. [Citing authorities.] 'Every estoppel must be certain to every intent, and not to be taken by argument or inference.' (Coke on Littleton, 352b.) 'If upon the face of a record anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded, and nothing conclusive in it when offered in evidence.' . . . By section 1908, sub-division 2, of the Code of Civil Procedure, 'the effect of a judgment is conclusive in respect to the matters directly

adjudged,' and by section 1911, 'that only is deemed to have been adjudged in a former action which appears upon its face to have been so adjudged, or which was actually and necessarily included therein, or necessary thereto.'" (See, also, Freeman on Judgments, sec. 256.) This is simply a statement of elementary principles relative to estoppel by judgment. The thing adjudged in the redemption action was simply that the plaintiffs, as successors in interest, had the right to redeem the whole of this property from the foreclosure sale. That they should have this right, it was essential that they should be successors in interest of one or more of the judgment debtors in some portion of the property, but it was not essential to this right, and therefore not essential to the judgment, that they should be the successors in interest of all the judgment debtors. (Code Civ. Proc. § 701, subd. 1.) Their allegation that they were the successors of all the judgment debtors was material in the sense that it was necessary for them to prove that they had succeeded to the interest of some judgment debtor in some part of the property, and the judgment is necessarily conclusive upon that point. Does it appear that anything further was determined by the judgment? We certainly cannot say that the offer to allow judgment permitting plaintiffs to redeem admitted anything more than was essential to such right of redemption. The judgment upon its face shows that there was no trial of any of the issues, and that the judgment was purely a consent judgment, based entirely on the offer and acceptance. It cannot be said, with any degree of certainty whatever, from the face of this record, that the question of the succession as to the Argall interest was litigated and determined in that proceeding. Indeed, the contrary affirmatively appears, and we are satisfied that the judgment is conclusive only of that which is essential to support it,—viz. that plaintiffs had succeeded to such an interest in the property as entitled them to redeem. We think the somewhat peculiar adjudication of the decree as to the character in which the plaintiffs redeemed the premises, adds nothing to the effect of the record. Some point is made as to the acceptance on redemption of all the redemption money, including that portion due on the Argall interest, but we do not see how this can affect the question here discussed.

It is contended by appellant that, as the plaintiffs have chosen to set forth in their supplemental complaint the particular facts upon which their alleged title to the Argall interest rests, the allegation of ownership in connection therewith was a mere conclusion, that they could, therefore, recover only by showing title by forfeiture from the Argalls, and that the judgment-roll in the redemption suit was inadmissible under the issues made to show title in them. (See *Castro* v. *Richardson,* 18 Cal. 478; *Lick* v. *Diaz,* 30 Cal. 65, 75; *Haven* v. *Seeley,* 59 Cal. 494; *Turner* v. *White,* 73 Cal. 299, [14 Pac. 794] ; *Levins* v. *Rovegno,* 71 Cal. 275, [12 Pac. 161] ; *Hesser* v. *Miller,* 77 Cal. 192, [19 Pac. 375] ; *Gruwell* v. *Seybolt,* 82 Cal. 9, [22 Pac. 938] ; *Savings and Loan Society* v. *Burnett,* 106 Cal. 514, 538, [39 Pac. 922].) There is much force in this contention, but as we here uphold objections made by appellant to this judgment-roll which go to the merits, it will be unnecessary to discuss an objection of this nature, which could be obviated by amendment of the pleadings. No point is made on this appeal as to the findings of fact relating to the question of forfeiture. It may be material to that question to determine whether at the time of the service of the notice to contribute the plaintiffs had been notified, actually or constructively, of the transfer by the Argalls. As this question has not been discussed, we do not decide the same. It appears unnecessary to require the parties to again litigate the question of title as to the remaining eleven twentieths of the property. As to that portion the judgment was clearly correct.

To the extent that the judgment decrees that plaintiff F. F. Britton is the owner of an undivided one fourth of the property, that plaintiff Annie L. Emerson is the owner of an undivided one fourth thereof, and that plaintiff Jacob Miller is the owner of an undivided one twentieth thereof, the judgment and order denying a new trial are affirmed.

As to the remaining undivided nine twentieths, constituting what is known as the Argall interest, the judgment and order are reversed, and the cause remanded for a new trial, with the right to the parties to amend their pleadings as they may be advised.

Shaw, J., Henshaw, J., McFarland, J., and Lorigan, J., concurred.

Rehearing denied.