[S. F. No. 19342. In Bank. Mar. 22, 1957.]

CLAUDINE HERDA, Appellant, v. CLARENCE HERDA, Respondent.

Henry W. Schaldach for Appellant.

Chas. E. R. Fulcher for Respondent.

TRAYNOR, J.—Plaintiff and defendant were married in 1925 and separated in 1937. On March 1, 1938, they executed a property settlement agreement. It recited that owing to disputes and differences between them the parties had agreed to live separate and apart and that it was their "mutual wish and desire . . . that a full and final adjustment of all their property rights, interests and claims be had, settled and determined by said parties in this Agreement, including custody and maintenance of the [two] minor children of said parties." It provided:

"Now THEREFORE, it is agreed in consideration of the mutual promises, agreements, and covenants contained herein, it is covenanted, agreed, and promised by each party hereto, to and with the other party hereto, as follows:

"FIRST: That, except as hereinafter specified, each party hereto is hereby released and absolved from any and all obligations and liabilities for the future acts and duties of the other, and that each of said parties hereby releases the other from any and all liabilities, debts or obligations of any kind or character incurred by the other from and after this date, and from any and all claims and demands, including all claims of either party upon the other for support and maintenance as wife or husband or otherwise, it being understood that this instrument is intended to settle the rights of the parties hereto in all respects, except as hereinafter provided. . . .

"FIFTH: [Plaintiff] does and shall accept the provisions herein made for her in full satisfaction of her right to the community property of the respective parties hereto, and in full satisfaction of her right to support and maintenance, and for the support and maintenance of said minor children as herein provided."

Provisions were then made for the division of the property. Plaintiff received household personal property and defendant received an automobile. A life insurance policy on defendant's life was assigned to plaintiff and defendant agreed to keep the policy in force. It was further agreed that plaintiff should have custody of the minor children and be entitled to take them out of the state.

Paragraph eight provided that "The husband agrees in consideration of the premises and mutual covenants and agreements herein contained to pay to the wife the sum of Two Hundred Fifty Dollars ($250.00) per month as and for the support and maintenance of herself and the minor children of said parties, said payments to commence on March 1, 1938 and to continue monthly thereafter on the first (1st) day of each and every month thereafter." It also provided that defendant should pay certain debts and plaintiff's moving expenses should she decide to leave the state.

On March 18, 1938, plaintiff filed an action for divorce on the grounds of extreme cruelty. She attached a copy of the agreement to the complaint and prayed that it be approved and made a part of the decree by reference. On April 18th she secured an interlocutory decree of divorce, which approved the agreement and incorporated it in its entirety by reference. It also provided that "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant be, and he hereby is, required to pay to plaintiff herein, as and for her support and the support, care and education of the minor children of said parties, the sum of Two Hundred Fifty Dollars ($250.00) per month, which said payments to commence March 1, 1938, and continue monthly hereafter on the 1st day of each and every month."

A final decree of divorce was entered in 1939, and plaintiff remarried in 1943. In 1944 defendant moved to have the payments reduced on the grounds that plaintiff had remarried and that one of the children was about to enter the armed services, but his motion was denied. In 1954 he moved to have the payments terminated on the ground that plaintiff had remarried and both the children had reached their majority. Plaintiff moved for attorney's fees to resist defendant's motion, and following a hearing the court ordered that the interlocutory and final decrees "be modified by terminating all payments for the support of the plaintiff and for the support, care and education of the minor children of the parties hereto forthwith." It also ordered that no counsel fees be allowed for plaintiff's counsel. Plaintiff appeals.

She contends that the provision for monthly payments was an integral and inseparable part of the property settlement agreement of the parties and that therefore the amount of the payments attributable to her cannot be reduced because of her remarriage. She also contends that the order denying modification in 1944 is res judicata in her favor. Defendant

contends, however, that the provision for monthly payments was a provision for alimony subject to section 139 of the Civil Code and that even if it constitutes an integral and inseparable part of the property settlement agreement, his obligations thereunder terminated after plaintiff remarried and the children reached their majority. He also contends that the 1944 order is not res judicata on the ground that it may have been based on continuing need of the full amount for the support, care, and education of the children, who were then still minors.

In *Messenger* v. *Messenger*, 46 Cal.2d 619, 628 [297 P.2d 988], we held that when "the parties have clearly expressed their 'purpose of fixing and adjusting their personal and property rights,' have provided that the provision for alimony is 'for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature,' and the wife has waived 'all right to future maintenance and support . . . , except as herein otherwise expressly provided,' the conclusion is inescapable that they have made the provisions for support and maintenance an integral and inseparable part of their property settlement agreement. With such conclusive evidence of integration, the provisions for support and maintenance or alimony would be subject to modification only if the parties expressly so provided." (Accord: *Anderson* v. *Mart*, 47 Cal.2d 274, 279 [303 P.2d 539].) ▮ It is clear from the provisions of the agreement quoted above, that the agreement in the present case falls squarely within the foregoing rule. The parties stated their intention to settle both their property and support and maintenance rights, and the fact that the amount of existing community property was small and the amount that might otherwise accrue before the termination of the marriage was speculative, in no way detracts from their clearly expressed intention, as between themselves, to fix and determine the amount of the payments thereafter. ▮ Similarly, it is not significant that the amount agreed upon was the same amount defendant had been paying plaintiff following their separation but before the agreement was executed. In the absence of the agreement, that amount might or might not have been accepted by the court as appropriate for alimony and child support and it could have been modified in the event of changed circumstances. The parties were entitled to agree to an amount that could not be decreased during the minority of the children or increased unless the welfare of

the children so required. (See *Dexter* v. *Dexter*, 42 Cal.2d 36, 43 [265 P.2d 873] ; *Messenger* v. *Messenger*, *supra*, 46 Cal. 2d 619, 627-628; *Anderson* v. *Mart*, *supra*, 47 Cal.2d 274, 281.)

The question remains whether the agreement may properly be interpreted as providing for payments for plaintiff's support following her remarriage. In *Anderson* v. *Mart*, *supra*, 47 Cal.2d 274, 280, we pointed out that in the case of integrated agreements executed and incorporated in decrees entered before the 1951 amendment to section 139, payments pursuant thereto do "not terminate on the death of the husband or the remarriage of the wife unless the agreement so provided. [Citations.]" (See also *Taliaferro* v. *Taliaferro*, 125 Cal.App.2d 419, 427 [270 P.2d 1036].) In the present case there is no express provision that the payments attributable to plaintiff's support should terminate on her remarriage. There is also, however, no express provision that they should continue until her death. Under these circumstances we have concluded that the insignificant amount of the community property involved in the agreement justifies the conclusion that by necessary implication the payments attributable to plaintiff's support should terminate on her remarriage just as the payments attributable to the support of the children terminate on their reaching their majority.

In *Dexter* v. *Dexter*, 42 Cal.2d 36, 41-42 [265 P.2d 873], the court stated that when "the parties have made the provision for support and maintenance an integral part of their property settlement agreement, the monthly payments will ordinarily have a dual character. To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. [Citations.] On the other hand, to the extent that they represent a division of the community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony, and accordingly cannot be modified without changing the terms of the property settlement agreement of the parties." It was therefore held in the Dexter case that a provision that the payments should terminate on the remarriage of the wife did not indicate that the monthly payments provided in an integrated agreement were for alimony. It is thus clear that the conclusion that the payments should so terminate, based either on an express provision to that effect or inferred from the provisions of

the agreement as a whole, does not conflict with the conclusion that it is an integrated bargain and that the payments are not otherwise subject to modification. Since the agreement in the present case dealt primarily with support rights and the payments were described as for support and maintenance, it would be unreasonable to conclude that the agreement contemplated that the payments should continue for plaintiff's benefit after the obligation to support the children had terminated (see *Anderson* v. *Mart, supra,* 47 Cal.2d 274, 283, and cases cited) and the obligation of plaintiff's support had been assumed by her second husband. *Harnden* v. *Harnden,* 102 Cal.App.2d 209 [227 P.2d 51], *Lane* v. *Bradley,* 124 Cal.App.2d 661 [268 P.2d 1092], and *Taliaferro* v. *Taliaferro,* 125 Cal.App.2d 419 [270 P.2d 1036], are not contrary to our conclusion herein since in those cases the agreements either expressly provided when the payments should terminate or involved the settlement of substantial property rights.

■ At the time of the previous modification proceedings neither child had reached his majority and it cannot be determined from the record whether the trial court's denial of defendant's motion to reduce the payments was based on a determination that plaintiff's remarriage was immaterial or was based on continuing need of the full amount for the support, care, and education of the children. Since the children have now reached their majority, the circumstances have materially changed since the entry of that order, and plaintiff has failed to prove that it was based on a determination of the issue now before us. Accordingly, it is not res judicata. (*Hurd* v. *Albert,* 214 Cal. 15, 26 [3 P.2d 545, 76 A.L.R. 1348]; *Horton* v. *Goodenough,* 184 Cal. 451, 460 [194 P. 34]; *Emerson* v. *Yosemite Gold Min. etc. Co.,* 149 Cal. 50, 57 [85 P. 122]; *Estate of Miller,* 104 Cal.App.2d 1, 18 [230 P.2d 667].)

■ Paragraph ten of the agreement provides in part that defendant agrees to "pay and indemnify the wife for all expenses, costs and attorney's fees in defending any suit, motion or proceeding brought by the husband or anyone in his behalf in any manner affecting this Agreement, and the wife's right thereto in any respect whatsoever." Since this provision does not make plaintiff's right to attorney's fees dependent on her inability to pay them, the trial court erred in denying her prayer therefor on the ground that she had not shown such inability.

The order is reversed insofar as it denies plaintiff's motion

for an award of attorney's fees. In all other respects it is affirmed.

Gibson, C. J., Spence, J., and McComb, J., concurred.

CARTER, J., Concurring and Dissenting.—I concur in the judgment of affirmance. I do not, however, agree with the majority in its reliance on the cases of *Dexter* v. *Dexter*, 42 Cal.2d 36 [265 P.2d 873], *Messenger* v. *Messenger*, 46 Cal.2d 619 [297 P.2d 988], and *Anderson* v. *Mart*, 47 Cal.2d 274 [303 P.2d 539]. I express no approval of the law as set forth in the above mentioned cases. In the Dexter and Messenger cases the court was concerned chiefly with the character of the payments provided for in the property settlement agreement and whether or not such payments constituted such an integral part of the agreement as to prevent a subsequent modification thereof.

*Anderson* v. *Mart*, *supra*, has some analogy to the case at bar. In that case plaintiff's former husband died. The agreement there contained no provision that the monthly payments should cease on plaintiff's remarriage, or the attainment of majority by the parties' child, or the death of the payor. In the case at bar, the agreement likewise contained no provision for termination of the monthly payments by remarriage of the payee, majority of the children, or death of the payor. Both the Anderson case and the case at bar involved agreements entered into prior to the 1951 amendment of section 139 of the Civil Code. The section as it read prior to the amendment provided that "Upon the remarriage of the wife, the husband shall no longer be obligated to provide for her support but such remarriage shall not affect his duty to provide for the maintenance of the children of his marriage." The 1951 amendment provided that "Except as otherwise agreed by the parties in writing, the obligation of any party in any decree, judgment or order for the support and maintenance of the other party shall terminate upon the death of the obligor or upon the remarriage of the other party."

The trial court in the Anderson case held that the payor's estate was indebted to plaintiff (his former wife) on the property settlement agreement and that the "agreement was incorporated in and made a part of the decree in the divorce action and that the provision for support therein was an inseparable part of an integrated property settlement agreement and therefore entered judgment for plaintiff for $14,190

to be paid out of the funds of the estate in due course of administration. That sum was fixed by the court as the present value of $50 per month for plaintiff's life expectancy." (47 Cal.2d 274, 277, 278 [303 P.2d 539].) A majority of this court held that the trial court properly allowed plaintiff to recover from her former husband's estate "the amount attributable to plaintiff's support for the remainder of her life expectancy." The conclusion was reached by reasoning that the support payments were not separable from the balance of the agreement and that the waiver provisions did not prevent plaintiff from enforcing the agreement as made. A majority also held that the agreement in the Anderson case fell "squarely within the . . . rule" of the Messenger case.

In the case at bar, where the majority reach an entirely different result, it is also held that the agreement "in the present case falls squarely within the . . . rule" of the Messenger case. That rule is that when "the parties have clearly expressed their 'purpose of fixing and adjusting their personal and property rights,' have provided that the provision for alimony is 'for and in consideration of the permanent and lasting division and settlement of all their property rights of every kind and nature,' and the wife has waived 'all right to future maintenance and support . . .,' except as herein otherwise expressly provided,' the conclusion is inescapable that they have made the provisions for support and maintenance an integral and inseparable part of their property settlement agreement. With such conclusive evidence of integration, the provisions for support and maintenance or alimony would be subject to modification only if the parties expressly so provided." (46 Cal.2d 619, 628 [297 P.2d 988].) Despite the fact that the agreement here contained no provision of any kind for termination of the monthly payments the majority holds that such payments terminated upon the remarriage of the wife and the attainment of majority by the children. It is noted, inter alia, in the majority opinion that there was here "no express provision that they [the payments] should continue until her [plaintiff's] death." There was also no such provision in the Anderson case agreement.

The reasoning of the majority in the present case and the result reached by it appear to me to be inconsistent. In the first instance the Messenger rule is relied upon and it is also said that "The parties stated their intention to settle both their property and support and maintenance rights, and

the fact that the amount of existing community property was small and the amount that might otherwise accrue before the termination of the marriage was speculative, in no way detracts from their clearly expressed intention, as between themselves, to fix and determine the amount of the payments thereafter. Similarly, it is not significant that the amount agreed upon was the same amount defendant had been paying plaintiff following their separation but before the agreement was executed. In the absence of the agreement, that amount might or might not have been accepted by the court as appropriate for alimony and child support and it could have been modified in the event of changed circumstances. The parties were entitled to agree to an amount that could not be decreased during the minority of the children or increased unless the welfare of the children so required.'' The majority, having concluded that this was an integrated, inseparable property settlement agreement, then stated: ''The question remains whether the agreement may properly be interpreted as providing for payments for plaintiff's support following her remarriage. In *Anderson* v. *Mart, supra,* 47 Cal.2d 274, 280, we pointed out that in the case of integrated agreements executed and incorporated in decrees entered before the 1951 amendment to section 139, payments pursuant thereto do 'not terminate on the death of the husband or the remarriage of the wife unless the agreement so provided. [Citations.]' (See also *Taliaferro* v. *Taliaferro,* 125 Cal.App.2d 419, 427 [270 P.2d 1036].) In the present case there is no express provision that the payments attributable to plaintiff's support should terminate on her remarriage. There is also, however, no express provision that they should continue until her death. *Under these circumstances we have concluded that the insignificant amount of the community property involved in the agreement justifies the conclusion that by necessary implication the payments attributable to plaintiff's support should terminate on her remarriage just as the payments attributable to the support of the children terminate on their reaching their majority.''* (Emphasis added.) On just what reasoning *this* conclusion is based escapes me. If the monthly payments are an integrated part of the property settlement agreement and the parties agreed that the wife would receive $250 per month without express provision for the termination thereof on her remarriage, how can it be concluded that her remarriage terminated such payments in view of the reliance

by the majority on the Anderson case? The code draws no distinction between remarriage of the wife and the death of the payor.

The majority next quotes from the case of *Dexter* v. *Dexter*, 42 Cal.2d 36, 41, 42 [265 P.2d 873], to the effect that monthly payments in a property settlement agreement "will ordinarily have a dual character. To the extent that they are designed to discharge the obligation of support and maintenance they will ordinarily reflect the characteristics of that obligation and thus have the indicia of alimony. [Citations.] On the other hand, to the extent that they represent a division of the community property itself, or constitute an inseparable part of the consideration for the property settlement, they are not alimony, and accordingly cannot be modified without changing the terms of the property settlement agreement of the parties." The majority then notes: "It was therefore held in the Dexter case that a provision that the payments should terminate on the remarriage of the wife did not indicate that the monthly payments provided in an integrated agreement were for alimony. *It is thus clear that the conclusion that the payments should so terminate, based either on an express provision to that effect or inferred from the provisions of the agreement as a whole, does not conflict with the conclusion that it is an integrated bargain and that the payments are not otherwise subject to modification."* (Emphasis added.) Then we come to the illogical summation that "Since the agreement in the present case dealt primarily with support rights and the payments were described as for support and maintenance, it would be *unreasonable* to conclude that the agreement contemplated that the payments should continue for plaintiff's benefit after the obligation to support the children had terminated (see *Anderson* v. *Mart, supra,* 47 Cal.2d 274, 283, and cases cited) and the obligation of plaintiff's support had been assumed by her second husband"! *In the Anderson case the provisions were also for support and maintenance,* and furthermore, a majority of this court has heretofore held that the labels adopted by the parties are not conclusive and that it is not controlling that the monthly payments for support have some of the indicia of alimony (*Messenger* v. *Messenger,* 46 Cal.2d 619, 625, 626 [297 P.2d 988], *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], and *Fox* v. *Fox,* 42 Cal.2d 49 [265 P.2d 881]).

Much has been said by a majority of this court in earlier cases about the character of the payments in a property

settlement agreement being one of fact for the trial court in a modification proceeding. However a majority has also held proper the action of a trial court refusing the admission of evidence on that point (*Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], and see my concurring and dissenting opinion at pages 44, 45). In the Anderson case the trial court determined that the monthly payments were an integrated and inseparable part of the property settlement agreement and that the obligation for such payments did not terminate on the death of the payor since no provision for termination had been agreed to by the parties. A majority of this court affirmed the judgment in that respect. Here the trial court found that the remarriage of the wife and majority of the children terminated the obligation for the monthly payments even though no provision for termination was to be found in the agreement entered into by the parties. A majority of this court affirms the action of the trial court but *not* on the theory that there was sufficient evidence to support the conclusion of the trial court on an issue of fact. The exact theory on which the majority conclusion is based is not stated. It would appear from reading the opinion that the opposite conclusion was to be reached since it is held that the monthly payments were an integrated, inseparable part of the property settlement agreement which contained no provision for termination on remarriage of the wife or death of the payor. It appears to me that the conclusion is inescapable that neither *Anderson* v. *Mart* nor *Messenger* v. *Messenger* is in "accord" with the holding here as the majority assures us they are, but that they are directly *contra* to both the reasoning and conclusion of the majority here.

The majority seems to have seceded from its position that the character of the payments in a property settlement agreement is a question of fact for the *trier of fact.* It is apparent from the majority holdings in the recent cases of *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], *Fox* v. *Fox,* 42 Cal.2d 49 [265 P.2d 881], *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865], *Messenger* v. *Messenger,* 46 Cal.2d 619 [297 P.2d 988], *Anderson* v. *Mart,* 47 Cal.2d 274 [303 P.2d 539], and the case at bar that the character of the payments for support and maintenance in a property settlement agreement is a *question for this court to determine as it sees fit* without reference to either the determination of the trial court or other standard based upon logic or precedent. Until such time as a majority of this court sees fit to clarify its position with

respect to the contractual rights of the parties and announces a standard based upon sound precedent, the statement in my concurring and dissenting opinion in the Flynn case that the law in this field constitutes an effective trap designed to catch both wary and unwary attorneys who are trying honestly and conscientiously to protect their clients' interests is more applicable now than it was then. The untold confusion existing in the law in this field as the result of the conflicting decisions of this court is also a trap for trial and appellate judges who are honestly endeavoring to do their duty in deciding cases of this character. This court could, by employing a simple process of logic and reason, so clarify the law in these cases that lawyers and trial judges would know how to dispose of them properly and thus relieve this court of at least a portion of its already tremendous work load.

I adhere to the views expressed in my concurring and dissenting opinions in the Fox, Dexter, Flynn, Messenger and Anderson cases, and it is my considered opinion that if and when the majority of this court adopts these views the confusion which now exists in this field of law will be obviated and the burden now cast upon the courts in disposing of these cases will be greatly reduced.

There may be cases where, in the settlement of property rights upon the dissolution of a marriage, that one spouse receives a larger share of the community property and agrees to pay the other cash in lieu thereof. In such a case the agreement should provide for the amount to be paid and the time of payment. It is obvious that such payments should not terminate upon the death of the payor or the remarriage of the payee. But in cases such as this and *Anderson* v. *Mart, supra,* where it appears that the payments are for support and maintenance, and no provision is made for their termination, they should, as a matter of law, terminate upon the death of the payor or the remarriage of the payee.

The trial court determined here that the provision for monthly payments was intended by the parties as support and maintenance for the wife and children and that such payments were intended to terminate upon the remarriage of the wife and the attainment of majority by the children. A reading of the record discloses ample evidence to sustain this determination and it should, therefore, be affirmed.

SCHAUER, J., Concurring and Dissenting.—I concur in the judgment insofar as it affirms the order of the trial court.

The evidence in this case, as I view it, supports and estab-

lishes legally tenable ground for all essential findings and conclusions of the trial court and for that reason I would affirm its order in all respects. Also I would prefer that the majority had expressly overruled rather than attempted to distinguish *Messenger* v. *Messenger* (1956), 46 Cal.2d 619 [297 P.2d 988], and *Anderson* v. *Mart* (1956), 47 Cal.2d 274 [303 P.2d 539], in the respects as to which each appears to assert and rely on a doctrine inconsistent with the holding of the majority today.

Shenk, J., concurred.